**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DANIEL REVALEE, individually and on behalf of all others similarly situated | * * * | |
| Plaintiff, | * * | |
| | * | CASE NO. 4:20-cv-549 |
| versus | * * | |
| TEXAS PRIDE SEPTIC, INC. and ROBIN MORAN | * * | |
| | * | COLLECTIVE ACTION |
| Defendants. | * | |

_____

**ORIGINAL COMPLAINT**

**SUMMARY**

1. Defendants, Texas Pride Septic, Inc. and Robin Moran ("Defendants"), employ and pay certain workers a day-rate.

2. Although these workers regularly work more than seventy (70) hours in a workweek, Defendants do not pay them overtime.

3. Defendants' policy of paying these employees a day-rate with no overtime pay, violates the Fair Labor Standards Act ("FLSA").

4. This collective action seeks to recover the unpaid wages, liquidated damages, and other damages owed to these workers, together with attorneys' fees, interest, and costs of these proceedings.

**JURISDICTION & VENUE**

5. This case raises a federal question under 29 U.S.C. § 216(b), giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants conduct substantial business in this District, sending Plaintiff and FLSA Collective members to perform work in this District while subjecting them to Defendants' improper and illegal payroll practices.

**PARTIES**

7. Daniel Revalee ("Revalee") was employed by Defendants as a day-rate employee. Revalee is domiciled in Texas and performed work out of Defendants' Spring, Texas facility as a septic repair tech and driver.

8. Revalee's written consent to this action is attached. (Exhibit "A).

9. Defendant Texas Pride Septic, Inc. ("Texas Pride") is a Texas domestic for-profit corporation doing business in the State of Texas.

10. Defendant may be served through its registered agent, Robin Moran, 23741 Tatum Bend Lane, Spring, Texas 77386.

11. Defendant Robin Moran ("Moran") is a Texas domiciliary who may be served at 23741 Tatum Bend Lane, Spring, Texas 77386.

12. Defendant Moran is the owner and manager of Texas Pride.

13. Defendant Moran was directly involved in Texas Pride's payroll decisions and practices, including but not limited to, setting pay rates and handling payroll each pay period.

14. Defendant Moran was also directly responsible for implementing Texas Pride's practice of paying its employees a day-rate without overtime.

15. Defendants paid each of the FLSA Collective members a day-rate, with no overtime premium for hours worked in excess of forty (40) in a workweek.

16. Defendants' payroll practice and classification of these workers as overtime exempt violated the FLSA.

## FACTS

17. Texas Pride is septic systems cleaning and repair business.[1]

18. Texas Pride primarily conducts business within the Greater Houston area and all within the State of Texas.

19. Defendants' employees routinely handle goods or materials – such as fuel, tool bags, tool boxes, waterproof boots, latex gloves, vacuums, hoses, and cell phones - that have moved in, or were produced for, interstate commerce.

20. In each of the past three (3) years, Defendants' gross revenue has exceeded $500,000.

21. Revalee worked for Defendants as a septic repair tech and driver.

22. Drivers and repair techs, and other similar job positions/titles, drove to customer locations within the State of Texas and performed septic cleaning and repair services.

23. Defendants paid Revalee according to his day-rate.

24. Defendants routinely scheduled Revalee and the other FLSA Collective members, for ten (10) or more hours each work day. Defendants scheduled Revalee and the other FLSA Collective members for as many as six (6) days in a workweek.

25. Over the past three (3) years, Defendants employed dozens of individuals – including Revalee – as drivers, repair techs and other non-exempt day-rate employees in Texas.

26. Defendants paid/pay the FLSA Collective members a day-rate without overtime.

---

[1] https://www.texasprideseptic.com/.

27. Defendants' day-rate employees (including, but not limited to, its repair techs and drivers) are non-exempt employees.

28. While the precise job duties of the day-rate employees may vary somewhat, any variations do not impact their entitlement to overtime for hours worked in excess of forty (40) in a workweek.

29. An employer can pay a non-exempt employee on a day-rate basis *provided* the employee receives overtime pay for hours worked in excess of forty (40) in a workweek. 29 C.F.R. § 778.112.

30. All of Defendants' day-rate workers perform manual labor in support of Defendants' cleaning and septic business.

31. All of Defendants' day-rate workers are entitled to overtime pay.

32. None of Defendants' day-rate workers received/receive overtime pay.

33. Defendants know their day-rate workers work more than forty (40) hours in a workweek. Defendants know their day-rate workers are not exempt from the overtime provisions of the FLSA.

34. Nonetheless, Defendants did not (and does not) pay its day-rate workers overtime for hours worked in excess of forty (40) in a workweek.

35. For example, one of Plaintiff's timesheets indicates that he worked fifty-four (54) hours and fifty-eight (58) minutes during one workweek, but he was not paid overtime for the fourteen (14) hours and fifty-eight (58) minutes of overtime that he worked during that workweek.

36. Defendants misclassified Plaintiff and Collective Members as independent contractors, when in fact, they were employees.

4

37. At all times relevant to this case, Defendants had knowledge of Plaintiff's regular and overtime work. Defendants approved Plaintiff's work and hours. Plaintiff's work benefitted Defendants.

38. Plaintiff was granted minimal discretion or independent judgment in the method and manner that his work was performed. Instead, many of Plaintiff's job duties as a septic repair tech and driver were controlled by Defendants. Plaintiff was given a document for each job assignment that detailed all of the work he was expected to perform, and he was also given deadlines for performing each assignment and was expected to complete each assignment according to Texas Pride's policies and procedures.

39. Plaintiff was required to perform his job under the supervision of one of Defendants or Defendants' employees. Once Plaintiff had completed the work on each assignment, he was required check in and report the completed assignment to Defendants' employees.

40. Defendants required Plaintiff to wear a uniform provided by Defendants that identified him as one of Defendants' employees.

41. Plaintiff did not set his own schedule. Instead, his schedule and work hours were determined by Defendants. Because Defendants controlled Plaintiff's work schedule, Plaintiff was not free to do work for other employers.

42. Defendants required Plaintiff and Collective Members to use time cards to record their punch-in and punch-out times on a punch clock at Defendants' facility.

43. The time cards were turned in to Defendant Moran to complete payroll each pay period.

44. Plaintiff used tools and equipment provided by Defendants to complete his assignments for Defendants. Plaintiff drove septic trucks owned and provided by Defendants and

5

installed septic tanks provided by Defendants. Plaintiff also used drills, saws, pliers, wire cutters, shovels, pry bars, zip ties, and electrical tape provided by Defendants that were necessary to complete certain job assignments. The cost of the equipment and supplies provided by Defendants far exceeds that of Plaintiff, as Plaintiff did not use any of his own tools or equipment in performing his job duties for Defendants.

45. The determining factor as to whether Plaintiff was an employee or independent contractor under the FLSA cannot be regulated by any contract or agreement. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See, Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

46. Courts generally utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c. The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d. The skill and initiative required in performing the job;

    e. The permanency of the relationship; and

    f. The degree to which the alleged employee's tasks are integral to the employer's business.

47. Applying the economic reality test, Plaintiff has established economic dependence on Defendants and that he was an employee and not an independent contractor.

48. Plaintiff was not in business for himself and truly independent, but rather was economically dependent upon employment with Defendants.

49. Plaintiff was not engaged in an occupation or business distinct from that of Defendants. To the contrary, Plaintiff was the basis for Defendants' business of providing septic repair services and thus, constitutes an integral part thereof.

50. Defendants retained complete and total control over the activities of Plaintiff and regulated all aspects of the job.

51. Plaintiff's economic status was inextricably linked to conditions over which Defendants had complete control, including, but not limited to, the assignment and scheduled hours of work shifts, detailed specifications for how he was expected to perform his work, and instructions for obtaining prior approval from Defendants to deviate from job specifications.

52. Plaintiff's financial investment is minor compared to the investment made by Defendants in the business at hand. All capital and risk belong to Defendants. Absent Defendants' investment in the provision of customers to whom Plaintiff provides septic repair services, no money would be earned.

53. The job of Plaintiff as a septic repair tech was an integral part of Defendants' business of providing cabling services and was critical to Defendants' success.

### COLLECTIVE/CLASS ACTION ALLEGATIONS

54. Revalee brings this claim under Section 216(b) of the FLSA as a collective action.

55. The same policy that caused Revalee to be denied his overtime pay caused Defendants' other day-rate workers to be denied their overtime pay.

56. While the precise job duties performed by the FLSA Collective members might vary somewhat, these differences don't matter for the purposes of determining their entitlement to overtime.

57. Nor do any differences in job duties matter for determining whether Defendants' policy of not paying day-rate workers overtime is legal.

58. The members of the FLSA Collective are all entitled to overtime for all hours worked over forty (40) in a workweek consistent with the overtime requirements of the FLSA.

59. Because Defendants uniformly failed to pay overtime to all day-rate workers, Revalee and the FLSA Collective members are similarly situated within the meaning of 29 U.S.C. § 216(b).

60. Upon information and belief, Defendants employed numerous day-rate employees like Revalee during the past three (3) years.

61. Nearly all of the questions related to Revalee and the FLSA Collective can be answered on a collective basis.

62. Defendants' practice of paying day-rates and not paying members of the FLSA Collective overtime is based on established companywide policies.

63. Defendants' payroll and time-keeping records would permit accurate calculation of damages with respect to each member of the FLSA Collective.

64. The most important questions presented in this case can be resolved on a collective-wide basis.

65. Absent a collective action, many members of the FLSA Collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of its violations of the FLSA.

66. Furthermore, individual litigation would be unduly burdensome to the judicial system.

67. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

### COLLECTIVE DEFINITION

68. Plaintiff brings this lawsuit pursuant to Section 216(b) of the FLSA as a collective action on behalf of:

> All drivers and repair techs employed by Texas Pride Septic, Inc. who, within the last three (3) years, worked over forty (40) hours in a workweek, and were not paid overtime.

### VIOLATION OF THE FLSA

69. Plaintiff incorporates the proceeding paragraphs by reference.

70. At all relevant times, Defendants have been employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

54. Defendants employed Revalee and each member of the FLSA Collective.

55. Defendants' pay policy denied Revalee and the FLSA Collective overtime compensation as required by the FLSA.

56. Defendants' failure to pay Revalee and the FLSA Collective overtime at rates not less than one and one-half times their regular rates violates 29 U.S.C. § 207.

57. Defendants' conduct, as described herein, was in willful violation of the FLSA.

58. Due to Defendants' FLSA violations, Revalee and the FLSA Collective are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, reasonable attorney fees, costs and expenses of this action.

### RECORDKEEPING VIOLATION

59. Plaintiff incorporates the proceeding paragraphs by reference.

60. Upon information and belief, Defendants destroyed the timecards of Plaintiff and other Collective Members at the end of each pay period.

61. Upon information and belief, Defendants did not maintain, for a period of at least two years, time cards detailing the start and stop times of Plaintiff and other Collective Members, as prescribed by 29 C.F.R. § 516.6.

62. Defendants have therefore violated the recordkeeping requirement of the FLSA. 29 U.S.C. § 211.

## PRAYER

**WHEREFORE**, Daniel Revalee prays for relief as follows:

1. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective to permit them to join this action by filing a written notice of consent;

2. Judgment against Defendants, Texas Pride Septic, Inc. and Robin Moran, awarding Plaintiff and the other FLSA Collective members all unpaid overtime compensation, liquidated damages, attorneys' fees, costs and expenses under the FLSA;

3. Pre- and post-judgment interest at the highest rate allowable by law; and

4. All such other and further relief to which Plaintiff and the other FLSA Collective may show themselves to be justly entitled.

Respectfully Submitted,

/s/ Trang Q. Tran
Tran Q. Tran
TRAN LAW FIRM, LLP
2537 S. Gessner
Suite 104
Houston, Texas 77063

Telephone: (713) 223-8855
Facsimile: (713) 623-6399
ttran@tranlawllp.com

/s/ Scott E. Brady
Philip Bohrer
Scott E. Brady
Amanda E. McGowen *to be admitted pro hac vice
BOHRER BRADY LLC
8712 Jefferson Highway, Ste. B
Baton Rouge, LA 70809
Tel: 225-925-5297
Fax: 225-231-7000
phil@bohrerbrady.com
scott@bohrerbrady.com
amcgowen@bohrerbrady.com

*Attorneys for Plaintiff and the Putative Collective*